IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY JAY MCCLOUD,<br><br>                Petitioner,<br><br>    vs.<br><br>WARDEN,<br><br>               Respondent. | No. 2:13-cv-00998-JKS<br><br>MEMORANDUM DECISION |

Ricky Jay McCloud, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. McCloud is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison, Solano. Respondent has answered, and McCloud has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On April 20, 2009, McCloud was charged with bank robbery and assault with a firearm. As to the bank robbery count, the information alleged four enhancements that McCloud personally and intentionally discharged a firearm causing great bodily injury. As to the assault with a firearm count, it likewise alleged that McCloud personally used a firearm in the commission of the offense. The enhancements alleged caused the offense to become a serious and violent felony within the meaning of California Penal Code §§ 1192.7(c)(8) & 667.5(c)(8).

On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against McCloud:

> The offenses occurred in Vallejo on Good Friday, April 6, 2007, at a Wells Fargo Bank branch in the Glen Cove Safeway. The victims were tellers Maryann Salanga and Abraham Arriola. While both testified in the first trial, only Arriola testified in the second. The jury also had time-stamped bank security video images that had been taken

> at a rate of one every two to four seconds but, after Arriola triggered a silent alarm, with greater frequency and quality.
>
> The tellers sat on swivel chairs at adjacent teller windows that day—Salanga to Arriola's right. Shortly after noon, as Arriola helped a customer, he heard a male voice from his right demand something to the effect, "Give me all your money." He turned to see a man in a gray hoodie (McCloud) with a gun pointed at Salanga's head. Seeing that McCloud was not looking his way, Arriola reached under the counter and triggered a silent alarm, then instinctively spun to his left and tried to duck into an office area just beyond a door 18 inches away. He did not make it. He heard a gunshot behind him in less than a second. He was shot through the right side of his hip, sending him to the floor with no control of his lower body. He heard customers screaming but no more shots, and pulled himself along the floor, by his arms, to greater safety, not seeing McCloud further. A month of hospitalization plus weeks more of progression to a wheelchair and then crutches eventually enabled him to walk again, but with constant pain from permanent nerve damage and the need for a catheter to urinate.

*People v. McCloud*, No. A127462, 2011 WL 2471896, at *1 (Cal. Ct. App. June 22, 2011).

After a first trial, a jury found McCloud guilty of both the bank robbery and assault with a firearm counts and also found true the enhancement on the assault with a firearm count. After the jury was polled, it appeared that, based on one juror's lack of response, there was no agreement as to the finding that McCloud had intentionally discharged a firearm causing great bodily injury in the commission of the robbery. A mistrial was declared on that enhancement; after a second trial, the jury found it to be true.

On December 18, 2009, the trial court sentenced McCloud to total determinate sentence of 7 years and 4 months of imprisonment (5 years for the robbery and a consecutive term of 2 years and 4 months for the assault with a firearm). For the enhancement for discharge of a firearm causing great bodily injury (the robbery charge enhancement), McCloud was additionally sentenced to a consecutive indeterminate sentence of 25 years to life. The total term imposed was therefore 32 years and 4 months to life in prison.

Through counsel, McCloud appealed his conviction, arguing that a statement he made to the police should have been admitted in its entirety. The Court of Appeal rejected his claim and affirmed the judgment against McCloud in an unpublished, reasoned opinion issued on June 22, 2011. *McCloud*, 2011 WL 2471896, at *9. Counsel for McCloud raised the same claim in a petition for review to the California Supreme Court, which was summarily denied on August 31, 2011.

McCloud then filed in the California Supreme Court a *pro se* petition for a writ of habeas corpus, arguing that both his trial and appellate counsel were ineffective, the trial court acted in excess of its jurisdiction when it failed to stay the sentence imposed on his assault with a firearm conviction, and the court's sentencing errors violated his rights to due process and protection against double jeopardy. The petition was denied without comment on May 1, 2013.

McCloud timely filed a Petition for a Writ of Habeas Corpus to this Court on May 17, 2013.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, McCloud asserts 13 grounds for relief. He first raises 7 claims alleging that his trial counsel was ineffective for failing to: 1) ask the court to admit as evidence at trial his entire statement to police detectives; 2) object "against a [second] trial"; 3) object to the enhancements on the ground that they constituted "additional terms/and/or punishment"; 4) argue that the assault with a firearm and its corresponding enhancement were a continuation of the robbery count and therefore should have been dismissed; 5) move to strike the enhancements that were not imposed; 6) object to the enhancement on the robbery conviction being imposed "without all facts being found true"; and 7) speaking for him at sentencing rather

3

than allowing McCloud speak for himself.  McCloud likewise contends in claim 8 that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's alleged failures.  In claim 9, he contends the trial court denied him due process when it failed to stay the sentence imposed on his assault with a firearm conviction.  He additionally argues in claim 10 that the trial court improperly allowed a second trial on the robbery charge enhancement in violation of his double jeopardy and due process rights.  In claim 11, he asserts that he was denied due process when the court imposed the robbery conviction enhancement in "which all facts were not found to be true."  He next contends in claim 12 that the trial court erred in failing to strike the enhancements that were not imposed.  Finally, he claims that his right to due process and the protection against double jeopardy was violated by the court's imposition of the enhancements.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). If the last reasoned state court

decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

McCloud first raises a litany of complaints surrounding the performance of his trial and appellate counsel. A number of his ineffective assistance of counsel claims correspond to other claims raised in his Petition, the resolution of which impacts his ineffective assistance claims. Accordingly, the Court will first address McCloud's other claims before turning to his ineffective assistance claims.

A.  Sentencing Errors (Claims 9, 11-13)

    1.  *Failure to Stay Sentence* (Claim 9)

McCloud argues that he was denied due process when the court "acted in excess of its jurisdiction" by failing to stay the assault with a firearm count in violation of California Penal

Code § 654[1] and the Fourteenth Amendment. McCloud raised this claim in his state petition for habeas relief, which was summarily denied.

The thrust of McCloud's claim is that the imposition of consecutive sentences rather than concurrent sentences violated § 654 because the assault with a firearm count "was not a sep[a]rate act" from the robbery count. Under California state law, the naming of separate victims in separate counts is a permissible reason for which a trial court may impose consecutive sentences. *People v. Caesar*, 84 Cal. Rptr. 3d 663, 671 (Cal. Ct. App. 2008) ("Based on our Supreme Court's analysis in *Calhoun*, we conclude that the naming of separate victims in separate counts is a circumstance on which a trial court may properly rely to impose consecutive sentence."), *overruled on other grounds by People v. Superior Court*, 224 P.3d 86 (Cal. 2010). Here, the Amended Information charging McCloud named both Arriola and Salanga as victims with respect to the robbery charge and named only Salanga as a victim of the assault with a firearm charge. At sentencing, the court asked counsel whether § 654 was implicated, to which the prosecutor replied, "It's my opinion that it's not 654, because of the fact that Maryann Salanga was also listed as the victim in the [robbery] case." The court indicated that the naming of two different victims would allow the imposition of consecutive sentences "even though it was sort of a single act." The trial court then imposed a consecutive term for the assault with a firearm conviction.

---

[1] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

It is not clear whether California law allows the imposition of consecutive sentences in cases such as this where the information lists two separate victims but lists one of those victims under both offenses. But even if the trial court erred under § 654, McCloud still cannot prevail on this claim because it presents only a state law sentencing error that is not cognizable on federal habeas review. *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and thus was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); *see also Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[2] Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was 'an unreasonable application of . . . clearly established Federal law.'" (quoting § 2254(d)(1))).

---

[2]    At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000). This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

Even assuming, without deciding, that McCloud is correct that the trial court misapplied California law when imposing consecutive rather than concurrent sentences, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime). McCloud fails to allege any facts showing fundamental unfairness; accordingly, McCloud is not entitled to relief on this claim.

       2.     *Erroneous Enhancements* (Claims 11-13)

McCloud additionally avers that the trial court made a number of errors with regard to the sentencing enhancements. McCloud raised all of these claims in his state petition for habeas relief, which was summarily denied. McCloud's claims regarding the sentencing enhancements also fail here because they, like his previous sentencing claim, involve only alleged errors in the interpretation or application of state sentencing laws. *See Souch*, 289 F.3d at 623. The claims are also without merit.

In claim 11, McCloud argues that the trial court denied him due process when it imposed an enhancement in "which all facts were not found to be true." He argues that Penal Code § 12022.53(e)(1) was not satisfied here and thus the personal discharge of a firearm enhancement could not be imposed. But McCloud was not sentenced pursuant to § 12022.53(e)(1) but rather to the personal discharge of a firearm enhancement under § 12022.53(d), which authorizes the imposition of a consecutive sentence of 25 years to life upon a finding that a person who, in the commission of robbery, personally and intentionally discharges a firearm and proximately causes

great bodily injury or death to a person other than an accomplice.  CAL. PENAL CODE § 12022.53(d).  The jury found true the elements of the personal discharge of a firearm enhancement and thus the consecutive sentence was properly imposed pursuant to § 12022.53(d).

He next argues in claim 12 that "[t]he court was suppos[ed] to impose the enhancement with the longest term and strike the rest of the enhancements."  In its answer, Respondent noted that "while a court may only impose a sentence on one enhancement, there is no requirement that the court strike any other enhancement."  McCloud apparently agrees with that assessment and notes in his Traverse that he "is not entitled to relief on this claim."

Finally, McCloud argues in claim 13 that "[t]he trial court erred by imposing any [and] all enhancements which are not crimes but are addition[al] terms/punishment."  The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  However, the United States Supreme Court has ruled that the Double Jeopardy Clause does not apply to sentencing enhancements, nor does it "extend[] to noncapital sentencing proceedings" whatsoever.  *Monge v. California*, 524 U.S. 721, 724 (1998); *United States v. Watts*, 519 U.S. 148, 154 (1997) (per curiam); *Witte v. United States*, 515 U.S. 389, 398-99 (1995).  Thus, McCloud's enhancement claim does not state a claim under the Double Jeopardy Clause.

B.    Double Jeopardy Violation (Claim 10)

McCloud likewise alleges that the trial court violated the Double Jeopardy Clause by "allowing" the second trial to proceed.  The California Supreme Court also denied this claim without comment.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense," but "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 671-72 (1982) (footnote omitted). The principle of double jeopardy protection following an acquittal generally[3] does not apply as a bar to a second prosecution where the trial court declares a mistrial because the jury could not reach a unanimous verdict. *Hoyle v. Ada County*, 501 F.3d 1053, 1060 (9th Cir. 2007); *see Richardson v. United States*, 468 U.S. 317, 324 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause.").

Here, McCloud's first trial resulted in a partial conviction and a mistrial was declared as to the personal discharge of a firearm causing great bodily injury enhancement. During the second trial, McCloud was tried only on that enhancement; he was not tried again on the offenses of which he had already been convicted. The Double Jeopardy Clause is not applicable to retrials of enhancement allegations because sentencing determinations in noncapital cases do not place a defendant in jeopardy for an "offense." *See Monge*, 524 U.S. at 727-28 (holding retrial on sentence enhancement after reversal for lack of sufficient evidence as to prior convictions not barred by Double Jeopardy Clause). McCloud is therefore not entitled to relief on this double jeopardy claim either.

---

[3] Double jeopardy protection may be invoked after a mistrial in certain circumstances, none of which are applicable here. *See United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality opinion) (double jeopardy protects defendants against governmental actions intended to provoke mistrial requests); *see also United States v. Dinitz*, 424 U.S. 600, 611 (1976) (double jeopardy bars retrials caused by certain bad-faith conduct by a judge or prosecutor).

C.	Ineffective Assistance of Counsel (Claims 1-8)

1.	*Strickland Standard on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, McCloud must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

12

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

2.  *Failure to Ask Court to Admit Entire Statement* (Claim 1)

McCloud alleges that his counsel was ineffective for failing to move to have McCloud's entire statement to police entered into evidence.  McCloud raised this claim on direct appeal, and the Court of Appeal rejected it on forfeiture grounds and on the merits.  *McCloud*, 2011 WL 2471896, at *7-9.  In support of this claim, McCloud asserts:

> At trial, the prosecutor presented evidence of a letter Mr. McCloud had wrote to the victim apologizing and admitting to the crime that was in question.  This letter was written immediately following a recorded confession to Vallejo Police Detective Mustard. . . . .
> Trial counsel failed to investigate the recorded confession and make the required request, [argument] or motion to the court to have the statement entered into evidence for the jury to understand or have corrected the misimpression the prosecutor was making when referring to the letter.

The record reflects that the prosecution relied in its case in chief on a letter of apology that McCloud had written to the victim at a detective's request which stated: "[m]y intention was to scare you by firing the gun, not shoot you."  McCloud testified that what he meant in his statement was that he did not intend to fire the gun but that it went off accidentally.  Defense counsel requested that the rest of McCloud's statement to the police be admitted so that it could "be taken in context."  McCloud argued on direct appeal that the trial court abused its discretion in refusing defense counsel's request and that "[h]ad [the jury] heard [McCloud's] statement placed into the proper context wherein he repeatedly said he did not mean to fire the gun, it is

13

reasonably probably that the [discharge of a firearm causing great bodily injury] enhancement would not have been found to be true."

As the appellate court found, however, the substance of the omitted portions of the statement were already in evidence through testimony at trial:

> McCloud testified that, in the interview, "I said I didn't mean to shoot nobody or hurt nobody. I believe I said that." Mustard confirmed, on cross-examination by defense counsel (over a continuing hearsay objection by the prosecutor): "A That is true, he did say that. [¶] Q That he wasn't planning on shooting, right? [¶] A Correct. [¶] Q And he also says he wasn't planning on shooting nobody, right? [¶] A That's true." Mustard added, as to whether McCloud said in the interview that he did not try to shoot: "A (Referring to document.) He does say that. [¶] Q Okay. And so what he tells you is he didn't try to shoot, right? [¶] A He does say that, yes. [¶] Q You ask him a follow-up question. You want to know, 'You didn't try to, right?' And he says 'No'? [¶] A Correct." Mustard was then further examined, regarding the inconsistent wording in the apology letter: "Q He actually tells you—he gives you these statements about that he didn't—he didn't intend to shoot, didn't try to shoot before he actually writes what we've talked about is the apology letter, People's 26, right? [¶] A That is true." As for McCloud knowing at the time that anyone was hurt, we have this: "Q And he told you that when he left the store, he didn't know at that moment as he was leaving that anyone had even been actually hit by the shot, true? [¶] A He did say that." Still later in his testimony is this: "Q Sir, Mr. McCloud told you that when he left the store, he did not know anyone had been shot, right? [¶] A That's true."

*McCloud*, 2011 WL 2471896, at *8.

As the appellate court concluded, "The quoted testimony shows that those complain-of parts of the interview were in fact in evidence, and this surely explains why defense counsel never sought further admission of the interview in the second trial." *Id.* at *9. Because the contentions he wished to raise were already in evidence, McCloud cannot show that he was prejudiced by counsel's failure to move to admit the statement in its entirety. The state court's rejection of this claim did not contravene or unreasonably apply federal law, and McCloud is not entitled to relief on this claim.

14

4.      *Failure to Allow McCloud to Speak at Sentencing* (Claim 7)

McCloud additionally claims, as he did in his state habeas petition, that his trial counsel was ineffective for "fail[ing] to secure Mr. McCloud his allocutional statement to the court." According to McCloud, his counsel "had agreed to let Mr. McCloud address the court for issues claimed in this petition [and] for remorse." However, counsel did not "secure this right [and] in turn spoke for Mr. McCloud unknown to Mr. McCloud that he was being addressed by the courts."

The record indicates that the court allowed McCloud an opportunity to allocute when the judge asked whether there was any reason that judgment should be pronounced, but that defense counsel answered "no" in response. California law requires that the trial court ask a defendant whether he has any legal cause why judgment should not be pronounced against him. CAL. PENAL CODE § 1200. However, a response by defense counsel to that inquiry satisfies a defendant's right of allocution under state law. *People v. Wiley*, 129 Cal. Rptr. 13, 23 (Cal. Ct. App. 1976), *disapproved on other grounds, People v. Wheeler*, 583 P.2d 748 (Cal. 1978); *see also People v. Sanchez*, 140 Cal. Rptr. 110, 112 (Cal. Ct. App. 1977) (finding no abuse of discretion found where the trial court failed to ask whether the defendant personally wished to speak).

McCloud cannot show that federal law was violated here either. While the Ninth Circuit has held that a defendant in state court has a constitutional right to speak at a sentencing hearing, that holding was expressly "limited to circumstances in which a defendant, either unrepresented or represented by counsel, makes a request that he be permitted to speak to the trial court before

sentencing. If the trial court denies that request, the defendant has not received due process." *Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir. 1992). That circumstance is not raised here.

Moreover, McCloud fails to demonstrate that he was prejudiced by his counsel's conduct. In his Traverse, McCloud says he had various legal claims as well as mitigating and remorse claims he wished to raise to the court to support his request for a lesser sentence. But as discussed throughout this opinion, none of McCloud's legal claims have merit. The record also reflects that McCloud was able to give a statement expressing remorse for his behavior and stating that "he was going through a difficult time as he was unable to provide for his children" and "did not intend for anyone to get hurt." This statement was part of his pre-sentence report which was before the trial court at sentencing. McCloud's contention that his personal statement at sentencing would have impacted the court's sentencing determination is purely speculative and unfounded. McCloud is not entitled to relief on this claim.

5.  *Remaining Claims* (Claims 2-6, 8)

As McCloud acknowledges in his Traverse, claims 2, 4, 5, and 6 correspond to claims 10, 9, 12, and 11, respectively, which have been considered and rejected above.[4] The issue raised in claim 3—that his trial counsel failed to investigate or object to the imposition of the enhancements as "additional terms/and/or punishment"—correlates to his claim 13 that "[t]he trial court erred by imposing any [and] all enhancements which are not crimes but are

---

[4] In his Traverse, McCloud inadvertently refers to his claim that the trial court erred in failing to stay his sentence (claim 9) as claim 10. That claim does, as McCloud acknowledges, relate to his claim 4. The Court also notes that a number of McCloud's underlying claims were rejected because they are not cognizable on federal habeas review. Counsel's failure to raise a meritorious state law claim may sustain an ineffective assistance of counsel claim on federal habeas review even if the merits claim itself would not be cognizable, but here McCloud fails to establish that his state law claims were meritorious.

addition[al] terms/punishment." Because McCloud's underlying claims 9 through 13 are without merit, counsel was not ineffective for failing to raise them at trial. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)); *see also Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a Strickland ineffective assistance of counsel claim). McCloud therefore cannot prevail on claims 2 through 6.

McCloud argues in claim 8 that his appellate counsel was ineffective for "fail[ing] to file a merit[ori]ous brief." Although not entirely clear, it appears that McCloud alleges that appellate counsel should have raised the claims he has raised in the instant Petition. As previously discussed, however, none of those claims have merit and thus his counsel cannot be faulted for failing to raise them on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel). McCloud is therefore not entitled to relief on any of his ineffective assistance of counsel claims.

V. CONCLUSION AND ORDER

McCloud is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 2, 2014.

               /s/James K. Singleton, Jr.
               JAMES K. SINGLETON, JR.
               Senior United States District Judge